UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULINE MERCEDES VELEZ,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF VETERANS AFFAIRS,<br><br>Defendant. | Case No. 20-cv-05170-KAW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 48 |

Plaintiff Pauline Mercedes Velez filed the instant complaint against Defendant Department of Veterans Affairs ("VA"), alleging that she was subjected to discrimination and retaliation when she was removed from her position as Site Manager in 2018. (Compl. at 11, 19, Dkt. No. 1.) Pending before the Court is Defendant's motion for summary judgment. (Def.'s Mot. for Summ. J., Dkt. No. 48.) Having considered the parties' filings, the relevant legal authority, and the arguments made at the April 21, 2022 hearing, the Court GRANTS Defendant's motion for summary judgment.

## I.  BACKGROUND

Plaintiff is a Hispanic woman who is employed by the VA Northern California Health Care System ("NorCal VA") as a vascular surgeon and as the Assistant Chief of Surgical Service ("Assistant Chief") at the Martinez campus. (Smith Decl., Exh. D ("Velez Depo.") at 32:18-19, 34:24-35:4, 35:15-23.) Between 2001 and August 2018, Plaintiff also served as Site Manager at the Martinez campus. (Velez Decl. ¶ 2, Dkt. No. 51-2.) At the time, Plaintiff was one of three physicians who served dual roles as Site Managers; the other two physicians were Dr. Ronald Chun in Oakland and Dr. Jane Addagatla in McClellan. (Velez Depo. at 90:1-19.) Plaintiff asserts that she was compensated several thousand dollars a year for this role, while Defendant

asserts that Plaintiff was not compensated. (Velez Depo. at 53:19-54:5; Smith Decl., Exh. A ("Graham Depo.") at 56:15-17, 57:9-23.[1])

As Site Manager, Plaintiff was responsible for managing the allocation of spaces within the campus, participating in the planning process for construction projects and clinical programs, and resolving issues across campus. (Velez Decl. ¶ 3.) In her clinical role as Assistant Chief, Plaintiff was supervised by the Chief of Surgery and Chief of Staff. (Velez Depo. at 38:11-14; Graham Depo. at 40:1-3.) In her administrative role as Site Manager, Plaintiff was supervised by the Associate Director for the East Bay Division. (Graham Depo. at 40:6-7.) The Associate Director, in turn, was supervised by the Director of NorCal VA. (Graham Depo. at 61:19-20.)

In 2004, Plaintiff successfully sued the VA and the Air Force. (Velez Decl. ¶ 4.) As a result of the lawsuit, Plaintiff became the "go-to" person for other physician and staff members experiencing discrimination. (Velez Decl. ¶ 4.)

In 2014, David Stockwell became Director of NorCal VA. (Velez Decl. ¶ 5.) Plaintiff asserts that thereafter, the culture of discrimination at the VA became worse. Specifically, the then-Chief of Surgery, Scott Hundahl, discriminated against women and minorities. (Velez Decl. ¶ 6.) Plaintiff supported staff who made EEO complaints against Dr. Hundahl and others, resulting in a complaint by Dr. Anthony Lazzarino to Dr. Hundahl and Chief of Staff William Cahill about Plaintiff being "a relentless advocate for Dr. Sandra Martin." (Velez Decl. ¶ 6; Hoyer Decl., Exh. F, Dkt. No. 51-1.) In 2017, after several women brought claims against the VA for sexual harassment, Director Stockwell commented in a local news interview that women who were unhappy with the investigative process "can certainly vote with their feet about their

---

[1] Plaintiff objects to Associate Director Graham's testimony regarding her compensation for Site Manager duties as lacking foundation because he had no responsibility for it. (Pl.'s Opp'n at 6 n.2.) Although Defendant fails to respond, the Court OVERRULES Plaintiff's objection. Associate Director Graham explains the basis for his conclusion, explaining that Plaintiff would not have been paid for being a Site Manager because she was never formally assigned to the role, and people were not paid for roles that they were not formally assigned. (Graham Depo. at 57:12-23.) At the summary judgment stage, however, "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *see also Chiles v. Permanente Med. Grp.*, No. 12-cv-05796-MEJ, 2014 U.S. Dist. LEXIS 141081, at *11-12 (N.D. Cal. Sep. 30, 2014) (overruling lack of foundation objection in summary judgment order).

2

1  employment decisions of working with the VA." (Velez Decl. ¶ 5.)

2        Plaintiff also lost support staff. For example, Plaintiff lost the assistance of the Chief
3  Administrative Officer after the position was transferred to Sacramento. (Velez Decl. ¶ 7.)
4  Between 2012 and 2016, Dr. Hundahl removed Plaintiff from being the first-line supervisor for
5  surgeons and podiatrists in Martinez, authorized the transfer of spaces without Plaintiff's input,
6  and reassigned staff authorized for Martinez to Sacramento. (Velez Decl. ¶¶ 8-9.) In 2018,
7  Plaintiff's administrative staff were reassigned to be supervised by the Associate Director in
8  Martinez. (Velez Decl. ¶ 9.)

9        In November 2016, Timothy Graham became the Associate Director for the East Bay
10 Division. (Graham Depo. at 10:1-4, 10:11-16.) Associate Director Graham was based at the
11 Martinez campus, and was responsible for supervising Site Managers for the East Bay sites.
12 (Graham Depo. at 10:19-22.) Associate Director Graham was also responsible for the day-to-day
13 operators at the Martinez campus, and understood his job description to include the Site Manager
14 duties that Dr. Velez had assumed. (Graham Depo. at 68:2-5.)

15       Prior to Associate Director Graham assuming the position, Director Stockwell had
16 discussed with former Associate Director David Mastalski about the need to seek clarity on
17 responsibilities on the Martinez campus between the Associate Director and the Site Manager.
18 (Stockwell Depo. at 32:21-25.) Mr. Mastalski did not want to address clarifying those
19 responsibilities, and Director Stockwell had further conversations with Mr. Mastalski on the
20 matter throughout the years without result. (Stockwell Depo. at 33:1-4, 36:6-19.) After Mr.
21 Graham replaced Mr. Mastalski as Associate Director, Director Stockwell again raised the need to
22 clarify the roles of Site Manager and the Associate Director. (Stockwell Depo. at 74:8-19, 78:12-
23 19.) Director Stockwell did not give Associate Director Graham any instructions on how to
24 accomplish the task, nor did he instruct Associate Director Graham to remove Plaintiff's Site
25 Manager duties. (Stockwell Depo. at 78:17-19, 79:24-80:5.)

26       Associate Director Graham concluded that having Plaintiff perform the Site Manager
27 administrative responsibilities "was a duplication of effort and . . . a waste of government
28 resources." (Graham Depo. at 48:18-21.) As Plaintiff was paid over $300,000 a year to provide

clinical services to veterans, Associate Director Graham believed Plaintiff should prioritize providing care to veterans whereas the "administrative responsibilities c[ould] be handled at a much lower salary rate for an administrative staff member . . . ."[2] (Graham Depo. at 48:11-16.) Further, because Associate Director Graham was located in Martinez, there was already a GS-15 executive on campus performing the same administrative responsibilities as Plaintiff. (Graham Depo. at 13:6-14, 48:17-19.) Associate Director Graham found that while there were Site Managers at locations where there was no senior executive on the campus, there was only one other VA site which had both a Site Manager and a senior executive. (Graham Depo. at 13:12-16.) In coming to his determination, Associate Director Graham did not consult with Plaintiff. (Graham Depo. at 106:8-10.)

On August 20, 2018, Associate Director Graham issued a Change in Assignment Memorandum ("August 2018 Memorandum"). (Smith Decl., Exh. I ("August 2018 Memorandum").) The August 2018 Memorandum notified Plaintiff that she would no longer be Site Manager, but would remain in her role as Assistant Chief of Surgery and a Tier 2 physician. (*Id.*) Associate Director Graham further explained that campus operations would be a duty of the Associate Director, "consistent with how the health care system manages operations at the Sacramento campus." (*Id.*) Moreover, Associate Director Graham explained that he had not been able to identify another VA health care system where a Site Manager was present when senior executives were also present on the campus. (*Id.*)

Following the August 2018 Memorandum, Plaintiff's Site Manager responsibilities were reassigned to a lower-level administrator. (Velez Decl. ¶ 10.) Further, in Oakland, an administrative officer that reported to the then-Site Manager, Dr. Chun, was made the official Site Manager. (Graham Depo. at 83:13-22.) Dr. Chun was removed as Site Manager, but kept his original title as physician lead for primary care. (Graham Depo. at 83:13-22; Velez Decl. ¶ 10.)

---

[2] Plaintiff objects to Associate Director Graham's assertion that Plaintiff's time should be focused on providing clinical care to veterans as lacking foundation because Associate Director Graham did not know how Plaintiff spent her time and Plaintiff testified that her Site Manager duties did not detract from her surgical services. (Pl.'s Opp'n at 9.) The Court DENIES the objection. Associate Director Graham was testifying about his own conclusions and decisionmaking; whether his conclusion lacked an objective basis goes to credibility, not admissibility.

Plaintiff asserts that she has suffered emotional distress, as well as economic damage because the removal of her Site Manager role put her in a weaker position to apply for private sector positions after she retires from the VA. (Velez Decl. ¶ 13.)

On July 23, 2020, Plaintiff filed her complaint, asserting claims for: (1) exhaustion of administrative remedies based on the VA's failure to conduct a proper investigation, (2) retaliation against her EEO activities, and (3) discrimination based on national origin and sex. (Compl. at 5, 11, 18.) On March 17, 2022, Defendant filed the instant motion for summary judgment. On March 31, 2022, Plaintiff filed her opposition. (Pl.'s Opp'n, Dkt. No. 51.) On April 7, 2022, Defendant filed its reply.[3] (Def.'s Reply, Dkt. No. 53.)

## II.  LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where

---

[3] Both parties include footnotes that fail to comply with Civil Local Rule 3-4(c), which requires that the font size of footnotes be "in 12 point type or larger." Further, the Court is under no obligation to consider arguments made solely in footnotes. *See Riegels v. Comm'r (In re Estate of Saunders)*, 745 F.3d 953, 963 (9th Cir. 2014) ("Arguments raised only in footnotes . . . are generally deemed waived.").

The Court also notes that Defendant includes nearly 1,000 pages of exhibits in support of its motion and reply, including the entire deposition transcripts of seven individuals. It is unclear, however, why it was necessary to include all 87 pages of Mr. Cahill's deposition when Defendant's motion cited only four lines from it. (*See* Def.'s Mot. for Summ. J. at 5.) Likewise, Defendant included all 147 pages of Dr. Hundahl's deposition while citing only two pages from it. (*See id.* at 5, 15.) In the future, Defendant's counsel should be judicious when deciding which exhibit pages will aid the Court's resolution of the motion.

the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III. DISCUSSION

#### A. Proper Defendant

In a footnote on the cover page of its reply brief, Defendant raises the argument that it is not the proper Defendant. (Def.'s Reply n.1.) "Title VII requires that in a civil action alleging

6

employment discrimination by the government, 'the head of the department, agency, or unit, as appropriate, shall be the defendant.'" *Vinieratos v. United States*, 939 F.2d 762, 772 (9th Cir. 1991) (quoting 42 U.S.C. § 2000e-16(c)). Defendant agrees that this is simply a technical error; accordingly, the Court will construe the case as a claim against the Secretary of the VA.

### B. "Exhaustion of Administrative Remedies" Claim

Plaintiff alleges an "Exhaustion of Administrative Remedies" claim based on the ORM's investigation being inadequate. (Compl. at 5-6.) Defendant argues that "any complaints about the EEO process are not actionable in federal court." (Def.'s Mot. for Summ. J. at 23.) At the hearing, Plaintiff conceded that this claim is not actionable. *See Hill v. England*, No. CV-F-05-869 REC/TAG, 2005 U.S. Dist. LEXIS 29357, at *10 (E.D. Cal. Nov. 8, 2005) (concluding that a "plaintiff cannot rely on the allegations of mishandling of his EEO complaints by employees of the defendant as constituting, of itself, a violation of Title VII"). Accordingly, the Court GRANTS summary judgment in favor of Defendant on this claim.

### C. Scope of Discrimination and Retaliation Claims

Defendant argues that Plaintiff's remaining claims are limited to the removal of Plaintiff's Site Manager title, and that any other actions -- such as the alleged removal of administrative support or failure to promote -- have not been properly exhausted. (Def.'s Mot. for Summ. J. at 12.) In her opposition, Plaintiff argued a continuing violations theory, as well as asserting that she could amend her pleading to allege a claim under 42 U.S.C. § 1981. (Pl.'s Opp'n at 13-14.) At the hearing, however, Plaintiff disclaimed any damages based on actions other than the removal of her Site Manager role. Rather, Plaintiff limited the use of previous actions to background evidence in support of her claims. (See also Pl.'s Opp'n at 13.) Defendant responds that the prior and future events are irrelevant and confusing because they involve individuals other than Associate Director Graham, and are not otherwise related to the decision to remove Plaintiff's Site Manager role. (Def.'s Reply at 2.) For purposes of this motion, the Court will consider these events are background information that provides context to Plaintiff's claims. That said, many of these events do appear to be irrelevant. For example, Plaintiff points to Dr. Hundahl removing her as first-line supervisor, authorizing transfer of space without Plaintiff's input, and reassigning

1  staff.  (Velez Decl. ¶¶ 8-9.)  Plaintiff, however, has not suggested nor identified any evidence that
2  Dr. Hundahl influenced Associate Director Graham's decision to remove Plaintiff's Site Manager
3  role.  Thus, it is unclear how such events show that the challenged action was the result of
4  discrimination or retaliation, even if Dr. Hundahl had improper motives for his prior actions.

### D. Discrimination Claim

Claims of discrimination under Title VII are analyzed using a burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment decision, and (4) she was treated differently than similarly situated persons outside of her protected class.  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).  Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802-04.  "The defendant [has] the burden of producing an explanation to rebut the prima facie case—*i.e.*, the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  After the defendant provides a legitimate, non-discriminatory reason for the challenged actions, the burden then shifts back to the plaintiff to raise a genuine factual issue as to whether the employer's stated reason was "pretext" or a cover-up for unlawful discrimination.  *See Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993).

Here, Defendant contends that Plaintiff cannot establish either that she suffered an adverse action or that a similarly situated employee outside of Plaintiff's protected class was treated more favorably than her.  (Def.'s Mot. for Summ. J. at 14.)

#### i. Adverse Action

"[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).  Here, there is no dispute that Plaintiff's Site Manager responsibilities were removed.  There is, however, a genuine dispute of fact as to whether Plaintiff lost compensation as a result of

1    this removal.  At the summary judgment stage, the Court must view the evidence in the light most

2    favorable to the nonmoving party and draw all justifiable inferences in its favor.  In light of

3    Plaintiff's testimony that she was compensated a few thousand dollars a year for her Site Manager

4    responsibilities, the Court finds that Plaintiff has demonstrated an adverse action.

5          Even if Plaintiff did not lose compensation, the Court would still find that Plaintiff has

6    adequately demonstrated an adverse action.  The Ninth Circuit has found that "[t]ransfers of job

7    duties" constitute adverse employment actions.  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.

8    1987).  This is not a case where a few minor duties were removed; rather, Plaintiff's role as Site

9    Manager was removed entirely.  The Site Manager duties, in turn, were not insignificant; such

10   duties and responsibilities included being in charge of the budget for the site, allocating space,

11   designing new buildings, and participating in the planning process associated with construction

12   projects and clinical programs.  (Velez Decl. ¶ 3; Velez Depo. at 50:10-51:13.)  A jury could

13   readily find that the removal of Plaintiff's Site Manager role was an adverse action.

14         **ii.**    **Similarly Situated Comparators**

15         The Court, however, agrees that Plaintiff has failed to identify similarly situated employees

16   that was treated more favorably than Plaintiff.  "[I]ndividuals are similarly situated when they

17   have similar jobs and display similar conduct."  *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th

18   Cir. 2003).  "[W]hether two employees are similarly situated is ordinarily a question of fact.  The

19   employees' roles need not be identical; they must only be similar in all material respects."  *Hawn*

20   *v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (internal quotation omitted).

21         In her opposition, Plaintiff argued that appropriate comparators are "assistant service

22   chiefs, section chiefs, and other lead physicians who had administrative responsibilities,"

23   identifying three specific individuals.  (Pl.'s Opp'n at 19.)  At the hearing, Plaintiff admitted that

24   there were no similarly situated comparators who were treated more favorably than Plaintiff.

25   Instead, Plaintiff argued that she did not have to identify any comparators, relying on *Peterson v.*

26   *Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004).

27         *Peterson* does not suggest that comparators are not required.  Instead, the Ninth Circuit

28   specifically found that Plaintiff had failed to satisfy the fourth element, explaining why each of the

United States District Court
Northern District of California

three groups of similarly situated employees identified by Plaintiff were not comparable to Plaintiff. *Peterson*, 358 F.3d at 604-05. Thus, Plaintiff cannot demonstrate that similarly situated individuals outside of her protected class were treated differently or more favorably, and cannot demonstrate a *prima facie* case of discrimination under Title VII.

### E. Retaliation

Title VII prohibits federal employers from retaliating against employees who oppose unlawful discrimination. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Id.*

Defendant argues that Plaintiff cannot establish the third element of causation. "To establish causation, [Plaintiff] must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the firing and that but for such activity [P]laintiff would not have been fired." *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986) (internal quotation omitted).

#### i. Cat's Paw Approach

At the hearing, Plaintiff conceded that Associate Director Graham, the individual who made the decision to remove Plaintiff from the Site Manager role, did not know of Plaintiff's prior EEO case or her assisting other employees with discrimination and EEO complaints. (Graham Depo. at 25:4-8, 142:5-8; Smith Decl., Exh. B ("Graham Aff.") at 2.) Thus, Associate Director Graham could not have possibly decided to remove Plaintiff's Site Manager role in retaliation for her EEO activities when he did not know of those activities. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) ("[A]t the time Reynolds made the decision that directly resulted in the adverse action against Bires, he did not know that she had engaged in protected activity. This breaks the requisite causal link between the decision to implement the policies and Bires' EEOC complaint."). Instead, Plaintiff appears to assert a "cat's paw" approach, arguing that Director Stockwell knew of her EEO activity, and that he influenced or was otherwise involved in Associate Director Graham's decision to remove Plaintiff from the Site Manager role. (Pl.'s

Opp'n at 9-10, 21-22.) Under a "cat's paw" approach, the animus of a non-decisionmaker can be imputed onto the decisionmaker if the biased individual "influenced or was involved in the decision or decisionmaking process." *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007).

As an initial matter, Plaintiff does not demonstrate that Director Stockwell's knowledge of Plaintiff's EEO activity caused him to retaliate against Plaintiff. Director Stockwell testified that he had heard of Plaintiff's 2004 lawsuit. (Stockwell Depo. at 38:12-15.) Director Stockwell also testified that he was aware that Plaintiff had advocated for Dr. Martin, although he had not been aware that Plaintiff helped other employees in the VA pursue EEO complaints or that she advocated for antidiscrimination or diversity efforts. (Stockwell Depo. at 38:1-11, 99:13-15.) It appears, however, that Director Stockwell learned of Plaintiff's 2004 lawsuit around when he became director in 2014, while Plaintiff's advocacy of Dr. Martin appeared to have occurred around 2013-2014. (Stockwell Depo. at 38:14-15; Hoyer Decl., Exh. F (e-mails regarding Plaintiff's advocacy of Dr. Martin). Given that Director Stockwell learned of these actions around 2014, approximately four years prior to Plaintiff's removal as Site Manager, the Court cannot infer causation without something more. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1066 (9th Cir. 2002) ("A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation.").

Plaintiff fails to demonstrate Director Stockwell influenced, affected, or was involved in Associate Director Graham's decision to remove Plaintiff's role as Site Manager. In general, "if an adverse employment action is the consequence of an entirely independent investigation by an employer, the animus of the retaliating employee is not imputed to the employer. Conversely, even if the biased [employee] was not the principal decisionmaker, the biased [employee]'s retaliatory motive will be imputed to the employer if the [employee] influenced, affected, or was involved in the adverse employment decision." *Poland*, 494 F.3d at 1183.

In *Poland*, the Ninth Circuit found that the animus of a biased employee could be imputed to the employer. 494 F.3d at 1183. There, the biased employee, in retaliation for the plaintiff's complaints, asked the Customs Service to undertake an administrative inquiry of the plaintiff's performance. While the biased employee's "initiation of the administrative inquiry, on its own,

11

would not [have been] sufficient to impute [his] animus to the Customs Service's decision to transfer" the plaintiff, the inquiry itself was influenced by the biased employee because the inquiry panel had access to his "lengthy memo requesting the inquiry in which he outlined numerous incidents of malfeasance by [the plaintiff]." *Id.* Further, the inquiry panel interviewed the twenty-one witnesses selected by the biased employee, and considered notes on the plaintiff's performance provided by the biased employee. *Id.* Under such circumstances, the Ninth Circuit found that the biased employee's "animus had a pervasive influence on the administrative inquiry that led to the adverse employment action." *Id.*

Here, in contrast, Director Stockwell had conversations with Associate Director Graham about clarifying the duties of the Site Manager. (Stockwell Depo. at 78:12-23.) He testified that he did not instruct Associate Director Graham to remove Plaintiff's Site Manager duties, or give him any instructions on how to clarify the duties of Site Manager. (Stockwell Depo. at 78:17-19, 80:3-4.) Associate Director Graham, in turn, testified that he was the only one who made the decision to remove Plaintiff's Site Manager responsibilities after his review of management responsibilities. (Graham Depo. at 44:5-15.) Plaintiff points to no evidence that contradicts this testimony; rather, Plaintiff appears to argue that "clarifying the duties of the Site Manager" is effectively synonymous with removal. Director Stockwell, however, explained that there were other actions Associate Director Graham could have taken to clarify the roles, such as setting out a list of duties of the associate director versus the Site Manager. (Stockwell Depo. at 79:14-80:1.) Thus, even if Director Stockwell was acting out retaliatory motive, his initiation of Associate Director Graham's inquiry, on its own, is insufficient to "impute [his] animus" to Associate Graham's ultimate decision to remove Plaintiff's Site Manager role. *Poland*, 494 F.3d at 1183. Accordingly, the Court finds that Plaintiff has failed to demonstrate causation through a "cat's paw" approach.

        **ii.    Pretext**

At the hearing, Plaintiff for the first time argued that causation can be evidenced by pretext. Indeed, the Ninth Circuit has found that "the causation and pretext inquiries are often overlapping." *Emeldi v. Univ. of Or.*, 698 F.3d 715, 729 (9th Cir. 2012) (citing *Farrell v. Planters*

1    *Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000)).  In turn, Plaintiff "can prove pretext '(1)
2    indirectly, by showing that the employer's proffered explanation is 'unworthy of credence'
3    because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that
4    unlawful discrimination more likely motivated the employer." *Raad v. Fairbanks N. Star*
5    *Borough*, 323 F.3d 1185, 1194 (9th Cir. 2003).

6         In support of pretext, Plaintiff asserts that there are contradictions in Director Stockwell's
7    and Associate Director Graham's testimony.  (Pl.'s Opp'n at 20-21.)  Specifically, Plaintiff argues
8    that the removal of Plaintiff's Site Manager duties was purportedly to eliminate duplication and
9    confusion, but that Director Stockwell and Associate Director Graham did not know what the Site
10   Manager role entailed, how much time Plaintiff spent performing Site Manager duties, or how
11   efficient it was to reassign such duties.  (*Id.* at 20.)  Plaintiff also points to Director Stockwell's
12   characterization of Plaintiff as "antimanagement," as well as his 2017 statement that women who
13   were unhappy about the VA's investigation of sexual harassment could "vote with their feet."  (*Id.*
14   at 21-22.)

15        Even assuming that these statements by Director Stockwell demonstrated a retaliatory
16   motive on his part, it is not clear that Plaintiff has identified contradictions supporting pretext,
17   particularly as to Associate Director Graham -- the actual decisionmaker.  As Plaintiff correctly
18   points out, Associate Director Graham stated that he did not know how much time Plaintiff spent
19   on her Site Manager role, did not look at the labor mapping of the Site Manager position, and did
20   not consult with Plaintiff.  (Pl.'s Opp'n at 20; *see also* Graham Depo. at 43:10-13, 106:8-10,
21   116:21-117:4.)  Plaintiff suggests that this demonstrates that the decisionmakers did not know how
22   the Site Manager role functioned, supporting pretext.  (Pl.'s Opp'n at 21.)  Yet Associate Director
23   Graham explained that he understood that the duties of the Site Manager were already assigned to
24   him in his position description, such that he did not need to look at labor mapping.  (Graham
25   Depo. at 67:19-68:4, 116:25-117:4.)  In other words, if Associate Director Graham was focused on
26   duplication of his duties, his decision was not dependent on knowing how Plaintiff performed her
27   role as Site Manager, including the amount of time she spent in that role.  Thus, whether such
28   "contradictions" are sufficient to raise a genuine issue of material fact as to pretext is debatable.

Ultimately, however, even if such evidence was sufficient to raise a question of fact as to pretext (or of Plaintiff's "cat's paw" approach), such evidence is negated by the removal of the Site Manager role from Dr. Chun. "Evidence that a similarly situated employee was treated in a similar manner as a plaintiff negates a showing of pretext." *Jackson v. Foodland Super Mkt., Ltd.*, 958 F. Supp. 2d 1133, 1145 (D. Haw. 2013) (citing *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001)). In *Snead*, the Ninth Circuit acknowledged that there were inconsistencies in the defendant's "statements as to the timing of its decision to eliminate" the plaintiff's position as a market development manager. 237 F.3d 1080, 1094 (9th Cir. 2001). Nevertheless, the Ninth Circuit concluded that there was insufficient evidence to create a genuine issue of material fact as to pretext because two months after the elimination of plaintiff's position, the other market development manager position was also eliminated. *Id.* Such evidence "show[ed] that at least one other similar situated employee . . . was treated in a similar manner as [the plaintiff], thereby *negating any showing of pretext*." *Id.* (emphasis added); *see also Jackson*, 958 F. Supp. 2d at 1145-46 (finding that the defendant had negated a showing of pretext because a similarly situated coworker was also fired after engaging in same behavior); *DiDiana v. Parball Corp.*, 472 F3d. Appx. 680, 681 (9th Cir. 2012) ("Because at least one similarly situated employee was treated in a similar manner as DiDiana, that evidence negates any showing of pretext and therefore defeats DiDiana's claim.") (quotation omitted); *Schiff v. Barrett*, No. C 10-1051 PJH, 2011 U.S. Dist. LEXIS 100980, at *56 (N.D. Cal. Sep. 8, 2011) ("This showing that similarly situated employees were treated similarly to Schiff negates any showing of pretext."); *Mauran v. Wal-Mart Stores*, No. 2:16-cv-07808-RGK-JC, 2017 U.S. Dist. LEXIS 235736, at *23-24 (C.D. Cal. Sep. 22, 2017) (finding that there was some evidence of pretext, but granting summary judgment because other associates involved in the same incidents had also been disciplined).

Dr. Chun is similarly situated to Plaintiff because, like Plaintiff, he had dual titles -- his clinical role and his site manager role -- and was supervised by Associate Director Graham in his Site Manager capacity. (*See* Velez Depo. at 109:19-23, 132:16-19.) Also like Plaintiff, Dr. Chun was removed as Site Manager, and an administrative officer was made the Site Manager. (*See* Graham Depo. at 83:11-22.) Unlike Plaintiff, Dr. Chun did not engage in any EEO activity, and

14

Plaintiff points to no evidence suggesting otherwise. Thus, as in *Snead*, the fact that Dr. Chun also had his Site Manager role removed "negat[es]" any showing of pretext, such that Plaintiff cannot demonstrate that she was retaliated against on the basis of her EEO activity. Accordingly, summary judgment on Plaintiff's retaliation claim must be granted.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion for summary judgment.

IT IS SO ORDERED.

Dated: May 3, 2022

KANDIS A. WESTMORE
United States Magistrate Judge

15